FILED
2025 Mar-14  AM 11:11
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANGELA CARTER-WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | Case No. 2:23-cv-00236-SGC |
| ) | |
| WILMINGTON TRUST, NATIONAL ) | |
| ASSOCIATION, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION[1]

The plaintiff, Angela Carter-Washington, asserts three state law claims and one federal claim against the defendants, Wilmington Trust, National Association, solely as trustee of MFRA Trust 2014-2 ("Wilmington"), and Fay Servicing, LLC ("Fay"), in this action premised on federal question and supplemental jurisdiction. (Doc. 1; Doc. 13).[2] The case is before the court on the defendants' motion for summary judgment. (Doc. 20). The parties have briefed the motion fully, and it is ripe for review. (Docs. 24, 26, 36). For the reasons stated below, the court will grant

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 3).

[2] Citations to the record refer either to the document and page numbers assigned by the court's CM/ECF electronic document system or to the CM/ECF-assigned document number and the paragraph number assigned by the drafter of the document. Citations of the former type appear in the following format: (Doc. __ at __). Citations of the latter type appear in the following format: (Doc. __ at ¶ __).

the motion in part and deny it in part.

## I.    Standard of Review

Under Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE, "[t]he [district] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The party seeking summary judgment bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the record the party believes demonstrate the absence of a genuine dispute of material fact.  *Celotex Corp.*, 477 U.S. at 323.  If the moving party carries its initial burden, the non-movant must go beyond the pleadings and come forward with evidence showing there is a genuine dispute of material fact for trial.  *Id.* at 324.

The substantive law identifies which facts are material and which are irrelevant.  *Anderson*, 477 U.S. at 248.  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-movant.  *Id.* at 248.  If the evidence is merely colorable or not significantly probative, summary judgment is appropriate.  *Id.* at 249-50 (internal citations omitted).  All reasonable doubts about the facts should be resolved in favor of the non-movant, and all justifiable inferences

should be drawn in the non-movant's favor. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## II. Summary Judgment Facts[3,4,5]

Carter-Washington obtained a loan to purchase a house in Birmingham, Alabama in September 2006. (*See* Doc. 21-2). She executed a note promising to repay the loan. (Doc. 21-2). She also executed a mortgage for the house to secure the note. (Doc. 21-3). The court refers to the note and mortgage collectively as the "loan" and the house pledged as collateral as the "property." The loan ultimately came to rest in the hands of Wilmington. (Docs. 21-4, 21-5, 21-6). Fay serviced the loan for Wilmington. (Doc. 21-1 at ¶ 1).

The loan required Carter-Washington to make monthly payments of principal and interest and provided that if she failed to do so the lender could require

---

[3] The following facts are undisputed, unless otherwise noted. The court views the facts in the light most favorable to Carter-Washington, as the non-movant, and gives Carter-Washington the benefit of all reasonable inferences.

[4] The court does not credit as facts assertions made by counsel in a brief that are not accompanied by evidentiary support. Assertions made by counsel in a brief are not evidence. *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980). Decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[5] The defendants object to the admissibility on summary judgment of portions of the evidentiary submission made by Carter-Washington. (Doc. 37). The court declines to address the substance of the objections. The defendants are entitled to summary judgment in their favor on all but one of Carter-Washington's claims, even if the court considers the challenged evidence, and the challenged evidence plays no part in the court's conclusion the defendants are not entitled to summary judgment in their favor on the one surviving claim.

immediate payment of all outstanding principal and interest and foreclose on the property.  (Doc. 21-2 at ¶ 3; Doc. 21-3 at ¶ 14).  Requiring immediate payment of all outstanding principal and interest is called "acceleration" of a loan.  *See Acceleration*, BLACK'S LAW DICTIONARY (12th ed. 2024).  A prerequisite to acceleration and foreclosure was that the lender "give notice to [Carter-Washington]" specifying the default, giving Carter-Washington an opportunity to cure the default, and notifying Carter-Washington that failure to cure the default could result in acceleration and foreclosure.  (Doc. 21-3 at ¶ 22).  The loan articulated notice would be deemed "given to [Carter-Washington] when mailed by first class mail or when actually delivered to [Carter-Washington's] notice address," identified as the address of the property.  (Doc. 21-3 at ¶ 15).  Finally, as relevant here, the loan provided that "[i]f the default [specified in the notice of default] [was] not cured on or before the date specified in the notice, [the lender] at its option [could] require immediate payment in full of all [outstanding principal and interest] without further demand and [could] invoke the power of sale and any other remedies permitted by [a]pplicable law."  (Doc. 21-3 at ¶ 22).

Carter-Washington began having trouble making monthly payments at some point.  (Doc. 26-1 at ¶ 3).  She entered into a loan modification agreement with Wilmington in October 2017.  (Doc. 21-7).  The agreement reduced the amount of Carter-Washington's monthly payments.  (Doc. 21-7 at ¶¶ 2-3).  After Carter-

Washington failed to make all required modified monthly payments, the defendants sent a letter to the property address dated April 7, 2020, informing Carter-Washington the loan was in default and that, unless she cured the default, the loan could be accelerated and the property foreclosed on.  (Doc. 21-8).  The court refers to this letter as the "notice of default" or the "default notice."  The defendants maintained communication with Carter-Washington for the next ten months and attempted to work with her to avoid acceleration and foreclosure.  (Docs. 21-9 – 21-15).

Then, on February 7, 2021, Carter-Washington filed a bankruptcy petition.  (Doc. 21-17 at 2).  The bankruptcy court dismissed the petition on February 24, 2022, because Carter-Washington failed to make required payments under her bankruptcy plan.  (Doc. 21-1 at ¶ 11; Doc. 21-17 at 5).[6]  Carter-Washington filed a second bankruptcy petition on June 7, 2022.  (Doc. 22-1 at 2).  The bankruptcy court dismissed the second petition on August 25, 2022, again because Carter-Washington failed to make required plan payments.  (Doc. 21-1 at ¶ 12; Doc. 22-1 at 4).

Fay then commenced foreclosure proceedings and scheduled a foreclosure sale for October 12, 2022.  (Doc. 21-1 at ¶ 13).  On October 11, 2022, the day before

---

[6] Carter-Washington filed the February 7, 2021 and subsequent petitions under chapter 13 of the Bankruptcy Code, which allows individuals with regular income to develop a plan for repayment of adjusted debts subject to confirmation by the bankruptcy court.  *See In re Brown*, 742 F.3d 1309, 1314 (11th Cir. 2014); *In re Guillen*, 972 F.3d 1221, 1229 (11th Cir. 2020).

the foreclosure sale, Carter-Washington filed a third bankruptcy petition.  (Doc. 22-3 at 2).  As a general rule, the filing of a bankruptcy petition imposes an automatic stay of "various acts that are attempts to enforce prepetition claims or that would otherwise affect or interfere with property of the estate or debtor." *In re Jacks*, 642 F.3d 1323, 1328 (11th Cir. 2011) (citing 11 U.S.C. § 362(a)).  However, the general rule is subject to exceptions.  *In re Jean*, 508 F. App'x 939, 940 (11th Cir. 2013) (citing 11 U.S.C. § 362(c)).  One such exception is when a debtor has had two petitions dismissed within a one-year period preceding the filing of a third petition. *Id.* (citing 11 U.S.C. § 362(c)(4)(A)).  Because the bankruptcy petitions Carter-Washington filed on February 7, 2021, and June 7, 2022, were dismissed on February 24, 2022, and August 25, 2022, respectively, the bankruptcy petition Carter-Washington filed on October 11, 2022, did not trigger imposition of the automatic stay.[7]  The foreclosure sale occurred as planned on October 12, 2022. (Doc. 21-1 at ¶ 16).[8]  Wilmington purchased the property as the highest bidder. (Doc. 21-1 at ¶ 16).

On October 13, 2022, Carter-Washington's attorney received an e-mail from

---

[7] This is more a legal conclusion than a statement of fact, but the court includes it here because Carter-Washington does not challenge the conclusion or the propriety of the foreclosure sale that occurred on October 12, 2022, and because the conclusion serves a narrative purpose.

[8] Both Carter-Washington and her attorney were aware her third bankruptcy petition would not trigger the automatic stay and might not stop the foreclosure sale.  (Doc. 26-1 at ¶ 13; Doc. 26-2 at ¶ 9).

an attorney involved in the foreclosure sale on behalf of the defendants. (Doc. 30 at 2). The foreclosure attorney was responding to attempts made by Carter-Washington's attorney to communicate with her before the foreclosure sale occurred. (*See* Doc. 26-2 at ¶¶ 10-11). The foreclosure attorney informed Carter-Washington's attorney the foreclosure sale had occurred on October 12, 2022, because the third bankruptcy petition Carter-Washington filed on October 11, 2022, did not result in imposition of the automatic stay because her two prior petitions had been dismissed within the preceding year and Carter-Washington had not moved the bankruptcy court to impose a stay. (Doc. 30 at 2). Although a debtor who has had two bankruptcy petitions dismissed within a one-year period preceding the filing of a third petition does not enjoy the protection of the automatic stay, she can move the bankruptcy court to impose a stay. *In re Cook*, 614 B.R. 635, 641 (N.D. Ga. 2020) (citing 11 U.S.C. § 362(c)(4)(B)). The foreclosure attorney stated that the defendants likely would file a motion seeking relief from any stay imposed in Carter-Washington's bankruptcy case and an objection to confirmation of her bankruptcy plan. (Doc. 30 at 2).

On October 19, 2022, Carter-Washington moved the bankruptcy court to impose a stay. (Doc. 23-3). The bankruptcy court entered an order granting the motion at approximately 3:00 P.M. on November 3, 2022. (Doc. 23-4). The bankruptcy court initially imposed the stay through December 15, 2022, and later

extended the stay through 12:00 P.M. on December 16, 2022.  (Docs. 23-4; 23-7).

The bankruptcy court dismissed the third petition on December 20, 2022, again

because Carter-Washington failed to make required plan payments.  (Doc. 22-3 at

3).

The loan permitted the lender or its agent to "make reasonable entries upon

and inspections of the [p]roperty."  (Doc. 21-3 at ¶ 7).  A representative of the

defendants declares the property was inspected on September 12, 2022; October 18,

2022; November 3, 2022; December 5, 2022; and December 19, 2022.  (Doc. 21-1

at ¶¶ 14, 17, 19, 20, 22).[9]  He denies any personal belongings were removed from

the property on November 3, 2022, or December 5, 2022, when the court-imposed

stay was in effect.  (Doc. 21-1 at ¶¶ 19, 20).  He declares cleaning of the property

began on December 19, 2022, after the stay had expired, and was completed on

January 3, 2023.  (Doc. 21-1 at ¶ 22).  Cleaning was required, according to the

representative, because the property was vacant and in a state of disrepair.  (Doc. 21-

1 at ¶ 17).  Inspection reports, which include photographs of the property, support

this characterization.  (Docs. 22-2; 23-1; 23-2; 23-5; 23-6; 23-8).

---

[9] An affidavit is a sworn statement, meaning it is made under oath before a notary or other oath-taker and affixed with a notary seal.  *Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022).  An unsworn declaration may serve as a substitute for an affidavit for summary judgment purposes if the declaration concludes with the statement "I declare under penalty of perjury that the foregoing is true and correct," or a substantially similar statement, and the declaration is signed and dated by the declarant.  § 1746(2); *Roy*, 53 F.4th at 1347-48.  The declaration made by the defendants' representative complies with the requirements of § 1746(2).

Carter-Washington concedes the property was "severely damaged" but declares she and her husband, mother, and son lived in the house. (Doc. 26-1 at ¶¶ 6-7).[10] She further declares she found two people removing personal belongings from the property on October 28, 2022. (Doc. 26-1 at ¶¶ 16-17). She has produced an e-mail sent to her attorney on November 3, 2022, the same day the bankruptcy court entered the order granting her motion seeking imposition of a stay, by a real estate agent acting on the defendants' behalf, stating the defendants had directed that the "trash out" be completed. (Doc. 31 at 3). The e-mail is time-stamped 12:18 P.M., more than two hours before entry of the order imposing the stay. (*Compare* Doc. 31 at 1, *with* Doc. 23-4). Included in the defendants' evidentiary submission is a list of personal belongings Carter-Washington contends the defendants (or their agents) removed from the property, including furniture, appliances, collectibles, art, jewelry, "priceless" coins, electronics, mink coats, and luxury handbags. (Doc. 23-12).

Carter-Washington commenced this action in the Circuit Court of Jefferson County, Alabama, on January 9, 2023. (Doc. 1-1). The defendants then removed the case to this district court. (Doc. 1). The amended complaint, filed by Carter-Washington on November 8, 2023, is the operative pleading. (Doc. 13). Carter-Washington asserts four claims in the amended complaint. She asserts a breach of

---

[10] Carter-Washington's declaration complies with the requirements of § 1746(2).

contract claim based on the allegation she did not receive the notice contemplated by the loan as a prerequisite to acceleration and foreclosure.  (Doc. 13 at ¶¶ 20-28). She claims the defendants violated § 6-6-280 of the Alabama Code by entering the property, removing her personal belongings, and changing the locks without commencing an ejectment action against her.  (Doc. 13 at ¶¶ 39-44).  She claims the defendants violated the court-imposed stay by entering the property and removing personal belongings that were part of her bankruptcy estate during the pendency of the stay.  (Doc. 13 at ¶¶ 45-51).  Finally, she asserts a claim for invasion of privacy. (Doc. 13 at ¶¶ 56-59).   In her response to the defendants' motion for summary judgment, she argues the defendants invaded her privacy by inspecting the property and removing her personal belongings.  (Doc. 26 at 15-17).

## III.    Discussion

### A.    Breach of Contract Claim

The elements of a claim for breach of contract under Alabama law are (1) the existence of a valid contract, (2) the plaintiff's performance under the contract, (3) the defendant's nonperformance, and (4) damages resulting from that nonperformance.  *Dupree v. PeoplesSouth Bank*, 308 So. 3d 484, 490 (Ala. 2020). Carter-Washington's breach of contract claim fails on the second and third

elements.[11]

Carter-Washington did not make the monthly payments required under the loan, the contract at issue. (Doc. 26-1 at ¶ 3). Therefore, she cannot demonstrate her own performance under that contract. *See, e.g., Tidmore v. Citizens Bank & Tr.*, 250 So. 3d 577, 590-91 (Ala. Civ. App. 2017) (holding counter-plaintiff's failure to make required mortgage loan payments precluded him from maintaining counterclaim for breach of mortgage agreement); *Fed. Home Loan Mort. Corp. v. Capps*, 2019 WL 1028008, at *8 (N.D. Ala. 2019) (same).

Moreover, Carter-Washington has not shown the defendants failed to perform under the loan.[12] The failure of performance alleged by Carter-Washington is the fact that she did not receive the notice contemplated by the loan as a prerequisite to acceleration and foreclosure. (Doc. 13 at ¶¶ 20-28). However, the loan did not require that Carter-Washington *receive* the notice. It required that the lender "give [the] notice to [Carter-Washington]" and further provided that a notice was deemed

---

[11] The defendants argue Carter-Washington's breach of contract claim fails for reasons in addition to those discussed below. The court declines to address those arguments, or Carter-Washington's responsive arguments, given the strength of the reasons for failure of the claim that the court does discuss.

[12] Carter-Washington asserts for the first time in her response to the defendants' summary judgment motion that the defendants have never offered proof of publication of the foreclosure sale, as required by § 35-10-13 of the Alabama Code. (Doc. 26 at 8). Although the court strains to understand the relevance of this assertion to Carter-Washington's breach of contract claim, the court notes the defendants attached to their reply the proof of publication questioned by Carter-Washington. (Doc. 36-1).

"given to [Carter-Washington] when mailed by first class mail or when actually delivered to [Carter-Washington's] notice address," identified as the address of the property. (Doc. 21-3 at ¶¶ 15, 22). The defendants mailed the notice of default to the property address on or about April 7, 2020, before acceleration of the loan and commencement of foreclosure proceedings. (Doc. 21-8). Therefore, the defendants complied with the requirements of the loan. *See, e.g., Harris v. Deutsche Bank Nat. Tr. Co.*, 141 So. 3d 482, 489 (Ala. 2013) (holding evidence that notice of default and possible acceleration was mailed to notice address was sufficient to demonstrate compliance with paragraph of mortgage agreement substantially similar to paragraph at issue here); *Coleman v. BAC Servicing*, 104 So. 3d 195, 205 (Ala. Civ. App. 2012) (holding the same, even though mortgagor denied receiving notice); *Perry v. Fed. Nat'l Mortg. Ass'n*, 100 So. 3d 1090, 1097-98 (Ala. Civ. App. 2012) (same).

Carter-Washington also contends that, given the lapse of time between the date of the default notice (April 7, 2020) and the date of the foreclosure sale (October 12, 2022) and the fact that the defendants continued to work with her to avoid acceleration and foreclosure during that period, the defendants were required to issue a new notice of default before acceleration and foreclosure occurred. (Doc. 26 at 9). Carter-Washington cites no authority to support her contention, and the plain language of the loan refutes it. The loan provided that "[i]f the default [specified in

the notice of default] [was] not cured on or before the date specified in the notice, [the lender] at its option [could] require immediate payment in full of all [outstanding principal and interest] without further demand and [could] invoke the power of sale and any other remedies permitted by [a]pplicable law." (Doc. 21-3 at ¶ 22). The phrase "without further demand" indicates that, once a notice of default was given and the default remained uncured, no additional notice was required before acceleration and foreclosure occurred. This interpretation is consistent with the Eleventh Circuit's interpretation of substantially similar language. *See Broughton v. Suntrust Mortg., Inc.*, 571 F. App'x 891, 892 (11th Cir. 2014) (holding the language refuted argument lender was required to re-accelerate mortgage loan by subsequent notice after withdrawing foreclosure proceedings).

Finally, Carter-Washington asserts the e-mail sent to her attorney by the foreclosure attorney stating the defendants likely would file a motion seeking relief from any stay imposed in her bankruptcy case and an objection to confirmation of her bankruptcy plan led her to believe she could assert her defenses to foreclosure when the defendants made those filings. (Doc. 26 at 10). Carter-Washington has not explained the relevance of this assertion to the breach of contract claim presented in her amended complaint. The court discerns none and has no obligation to tease

out the possibilities.[13]    Insofar as Carter-Washington makes the assertion in furtherance of a claim the defendants breached an agreement, independent of the loan and embodied in the foreclosure attorney's statement, to halt efforts to take possession of the foreclosed property, the claim fails because Carter-Washington did not present it in her amended complaint.  *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (holding a plaintiff cannot raise a new claim at the summary judgment stage through argument made in a responsive brief).

## B.    Ala. Code § 6-6-280 Claim

Section 6-6-280 gives a person or entity with legal title to a property the right to sue for ejectment when another person unlawfully remains on the property.  *See* § 6-6-280. It is a mechanism that may be used by a purchaser of foreclosed property to force the former owner – the person whose property was foreclosed on – to surrender possession of the property.  *See, e.g., Powers v. Chadwell Homes, LLC*, 2024 WL 4246639, at *1-2 (Ala. Sept. 20, 2024); *Brewer v. Fairchild*, 2024 WL

---

[13] *See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.  Rather the onus is upon the parties to formulate arguments.") (internal citation omitted); *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1357 n.4 (S.D. Fla. 2017) ("[A] party who aspires to oppose a motion must spell out his arguments squarely and distinctly, or else forever hold his peace.") (internal quotation marks omitted and alteration adopted); *Vision Bank v. Merritt*, 2010 WL 5474161, at *4 (S.D. Ala. Dec. 8, 2010) ("If [the defendant] wishes to pursue [] a legal theory, it is incumbent on him to perform the necessary research and develop that argument, rather than stating it in the vaguest of outlines and expecting [the] [c]ourt to fill in the gaps."); *Fed. Ins. Co. v. Cnty. of Westchester*, 921 F. Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why [] points have legal merit; the [c]ourt does not serve as counsel's law clerk.").

4246653, at *1 (Ala. Sept. 20, 2024); *Steele v. Fed. Nat'l Mortg. Ass'n*, 69 So. 3d 89, 90 (Ala. 2010); *Pittman v. Regions Bank*, 226 So. 3d 193, 194-95 (Ala. Civ. App. 2016).  Neither the text of § 6-6-280 nor a thorough search of relevant case law suggests a former owner of foreclosed property can use the statute to bring a claim against the purchaser of the property for failing to sue for ejectment of the former owner after the foreclosure sale and before taking possession of the property and removing personal belongings.

### C.    Claim for Violations of Court-Imposed Stay

A debtor may recover actual damages for injuries caused by a willful violation of a bankruptcy stay.  *Lodge v. Kondaur Cap. Corp.*, 750 F.3d 1263, 1268 (11th Cir. 2014) (citing 11 U.S.C. § 362(k)).  "A willful violation of [a] [] stay does not require a specific intent to violate the [] stay.  A willful violation simply requires knowledge of the [] stay and an intent to perform the actions which violated the [] stay."  *Credit Nation Lending Servs., LLC v. Nettles*, 489 B.R. 239, 247 (N.D. Ala. 2013) (internal quotation marks and citations omitted).  The Eleventh Circuit has held district courts have jurisdiction to hear claims for violations of a bankruptcy stay.  *See Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342, 1343 (11th Cir. 2005).

As discussed above, a stay did not come into effect relative to the bankruptcy estate created by Carter-Washington's third bankruptcy petition until the bankruptcy court granted Carter-Washington's motion seeking imposition of a stay on

November 3, 2022. (*See* Doc. 23-4). It continued in effect until 12:00 P.M. on December 16, 2022. (*See* Doc. 23-7). Carter-Washington has come forward with three pieces of evidence she argues show the defendants violated the court-imposed stay.

The first is her declaration she found two people removing personal belongings from the property on October 28, 2022. (Doc. 26-1 at ¶¶ 16-17). That testimony does not show a violation of the court-imposed stay because the stay was not yet in effect on October 28, 2022. The second is the e-mail the defendants' real estate agent sent to Carter-Washington's attorney on November 3, 2022, stating the defendants had directed that the "trash out" be completed. (Doc. 31 at 3). That expression of intent made more than two hours before imposition of the stay is not significantly probative, especially in view of the declaration made by the defendants' representative that no personal belongings were removed from the property on November 3, 2022, and cleaning of the property did not begin until December 19, 2022, after expiration of the stay. *See Anderson*, 477 U.S. at 249-50 (explaining evidence that is merely colorful or not significantly probative will not defeat summary judgment).

The third is the inspection of the property conducted on behalf of the defendants on December 5, 2022. (Doc. 26 at 15). There is no dispute the inspection occurred on December 5, 2022, or that the court-imposed stay was in effect at that

time.  However, a property inspection does not violate a bankruptcy stay absent evidence the inspection was conducted to harass the debtor or coerce her to pay the debt owed.  *See, e.g., In re Kennedy*, 2023 WL 3011246, at *5 (Bankr. N.D. Ga. Apr. 19, 2023) (collecting cases); *In re Golden*, 568 B.R. 838, 841 (Bankr. M.D. Ala. 2017).  There is no evidence the December 5, 2022 inspection was conducted to harass Carter-Washington or coerce her to pay a debt.

### D.  Invasion of Privacy Claim

The invasion-of-privacy tort consists of four distinct wrongs, each with distinct elements.  *Flickinger v. King*, 385 So. 3d 504, 517 (Ala. 2023).  Carter-Washington proceeds under the "wrongful intrusion" prong of the tort.  This prong of the tort, "insofar as it applies to actions of a creditor in regard to his debtor, is the wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame[,] or humiliation to a person of ordinary sensibilities." *Liberty Loan Corp. of Gadsden v. Mizell*, 410 So. 2d 45, 47 (Ala. 1982).

Carter-Washington contends the defendants invaded her privacy by inspecting the property and removing her personal belongings.  (Doc. 26 at 15-17).  "A wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, including, of course, the plaintiff's home." *Johnson v. Stewart*, 854 So. 2d 544, 548 (Ala. 2002) (internal quotation marks omitted and alteration adopted).  Here, however, neither the entries onto nor the inspections of the property

were wrongful intrusions. The loan gave the defendants the right to "make reasonable entries upon and inspections of the [p]roperty." (Doc. 21-3 at ¶ 7). After the loan went into default, it was reasonable for the defendants to enter onto and inspect the property, given the property was the collateral securing the debt Carter-Washington owed. *See Marques v. JP Morgan Chase N.A.*, 2017 WL 11358416, at *11 (N.D. Ga. Jan. 17, 2017) (holding property inspections conducted by holder of security deed were not invasions of privacy under Georgia law because security deed permitted deed holder to conduct property inspections), *report and recommendation adopted*, 2017 WL 11358742 (N.D. Ga. Mar. 9, 2017). Moreover, there is no evidence the entries or inspections were conducted in a harassing way. *See Deutsche Bank Tr. Co. Americas v. Garst*, 989 F. Supp. 2d 1194, 1206 (N.D. Ala. 2013) (explaining "[p]ast cases have only recognized intrusion [] in the mortgage servicing context for hounding the plaintiff, with repeated conduct equating deliberate harassment or systematic campaigns designed to vilify the debtor or expose him to public ridicule.") (internal quotation marks and citation omitted and alteration adopted).

The court cannot reach the same conclusion with respect to the defendants' alleged removal of personal belongings from the property. The court begins by noting the defendants confine their denial they removed personal belongings from the property to two discrete dates: November 3, 2022, and December 5, 2022. (*See*

*generally* Doc. 21-1). That is to say they do not deny they ever removed personal belongings from the property but, rather, just that they removed personal belongings from the property on November 3, 2022, or December 5, 2022. Moreover, Carter-Washington affirmatively declares she found two people removing personal belongings from the property on October 28, 2022, and has provided an itemized list of her missing personal belongings. (Doc. 23-12; Doc. 26-1 at ¶¶ 16-17).

The defendants assert they had the right to remove Carter-Washington's personal belongings from the property before imposition and after expiration of the court-imposed stay, but the assertion is unaccompanied by citation to a provision of the loan that allowed removal or other legal grounds for the seizures. (Doc. 36 at 12). The defendants also note in the context of their argument regarding Carter-Washington's invasion of privacy claim that, after purchasing the property at the foreclosure sale, Wilmington was entitled to immediate possession of the property. (Doc. 36 at 12). The court agrees the purchaser of real property at a foreclosure sale is entitled to immediate possession of the property. *See Palmer v. Resol. Tr. Corp.*, 613 So. 2d 373, 375 (Ala. 1993). However, the basic legal distinction between real property and personal property requires the conclusion that a foreclosure purchaser's entitlement to immediate possession of real property does not extend to personal property contained within the real property.

Because there is evidence the defendants removed Carter-Washington's

personal belongings from the property and the defendants have not identified legal authority permitting that removal, the defendants have not shown their entitlement to summary judgment on this strand of Carter-Washington's invasion of privacy claim. Moreover, the court's independent research of the issue revealed persuasive authority suggesting a claim for invasion of privacy may lie where a foreclosure purchaser or its agent removes personal belongings from the foreclosed property. *See Russell v. Am. Real Est. Corp.*, 89 S.W.3d 204, 212 (Tex. App. 2002) (holding evidence real estate agent rummaged through "intimate personal belongings" of occupants of foreclosed property – including clothing, family photos, and personal care items – while conducting inspection of property for new owner, raised a fact issue as to whether real estate agent intruded into former occupants' solitude, seclusion, or private affairs or concerns); *DeVore v. Lyons*, 2017 WL 1231484, at *5 (N.D. Tex. Apr. 4, 2017) (holding allegations defendant removed personal and confidential items from defendant's residence stated plausible claim for invasion of privacy);[14] *cf. Mwangi v. Fed. Nat'l Mortg. Ass'n*, 162 F. Supp. 3d 1315, 1324 (N.D. Ga. 2016) (holding conversion claim based on alleged removal of personal belongings from foreclosed property survived summary judgment where there was a genuine dispute as to whether plaintiff had abandoned the foreclosed property or

---

[14] The elements of a claim for invasion of privacy under Texas law are similar to the elements of a claim for invasion of privacy under Alabama law. *Compare Russell*, 89 S.W.3d at 212, *with Mizell*, 410 So. 2d at 47.

the personal belongings located there).

The defendants ask that, in the event Carter-Washington's invasion of privacy claim survives summary judgment, the court restrict her ability to recover mental anguish damages in relation to the claim. (Doc. 24 at 23-24). They assert that under Alabama law a plaintiff cannot recover mental anguish damages unless she sustained a physical injury or was placed in immediate risk of physical harm by the challenged conduct, citing *Rawlings v. Dovenmuehle Mortg., Inc.*, 64 F. Supp. 2d 1156, 1167 (M.D. Ala. 1999), and contend there is no evidence Carter-Washington sustained a physical injury or was placed in immediate risk of physical harm by their conduct. (Doc. 24 at 24).

*Rawlings* addressed the recovery of mental anguish damages in the context of a negligence claim. *See Rawlings*, 64 F. Supp. 2d at 1167. Persuasive secondary authority regarding the recovery of damages under Alabama law explains the standard for recovery of mental anguish damages in the context of a negligence claim is distinct from the standard for recovery of mental anguish damages in the context of other tort claims. *See* ALABAMA LAW OF DAMAGES § 36:6 (6th ed.). In the context of other tort claims, a category that includes invasion of privacy claims, mental anguish damages are recoverable if the plaintiff sustained a physical injury or, in the absence of physical injury, property damage caused by conduct "committed under circumstances of insult or contumely." *Id.* (internal quotation marks omitted); *see*

*also Wal-Mart Stores, Inc. v. Bowers*, 752 So. 2d 1201, 1204 (Ala. 1999) (collecting cases). Because the defendants' argument does not address the appropriate standard, the court will not disallow the recovery of mental anguish damages in the context of Carter-Washington's invasion of privacy claim at this time. The defendants may ask the court to revisit the matter before trial by filing a motion that addresses the appropriate standard. Any such motion also should address authority that seems to suggest damages for mental anguish may be recoverable in the context of a tort claim, regardless of whether the plaintiff sustained a physical injury or property damage caused by conduct committed under circumstances of insult or contumely. *See, e.g., Slack v. Stream*, 988 So. 2d 516, 531 (Ala. 2008) ("It is well settled that a plaintiff may recover compensatory damages for mental anguish, even when mental anguish is the only injury visited upon the plaintiff.") (internal quotation marks omitted).

## IV.  Conclusion

For the reasons stated above, the court **GRANTS** the defendants' summary judgment motion (Doc. 20) as to Carter-Washington's breach of contract claim, claim brought under Ala. Code § 6-6-280, and claim for violations of the court-imposed stay and **DISMISSES** those claims **WITH PREJUDICE**. However, the court **DENIES** the motion (Doc. 20) as to Carter-Washington's invasion of privacy claim, while noting the claim may proceed only insofar as Carter-Washington claims

the defendants invaded her privacy by removing her family's belongings from the property.  The court **DENIES WITHOUT PREJUDICE** the defendants' request to restrict Carter-Washington's ability to recover mental anguish damages in relation to her surviving invasion of privacy claim.

**DONE** this 14th day of March, 2025.

_____
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE