UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA CARTER-WASHINGTON, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:23-cv-00236-SGC |
| WILMINGTON TRUST, NATIONAL ASSOCIATION, *et al.*, | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

Angela Carter-Washington commenced this case in the Circuit Court of Jefferson County, Alabama, against Wilmington Trust, National Association, solely as trustee of MFRA Trust 2014-2 ("Wilmington"), and Fay Servicing, LLC (collectively, "the defendants") after the defendants foreclosed on her home and disposed of its contents. (Doc. 1-1).[2] The defendants removed the case to this federal district court on February 24, 2023. (Doc. 1). The court entered a memorandum opinion and order on March 14, 2025, granting summary judgment in the defendants' favor on Carter-Washington's breach of contract claim, her claim brought under Ala. Code § 6-6-280, and her claim for violations of a court-imposed bankruptcy stay brought under 11 U.S.C. § 362(k) and denying summary judgment

---

[1] The parties have consented to the exercise of dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 3).

[2] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

in the defendants' favor on Carter-Washington's claim they invaded her privacy by removing personal belongings from the foreclosed property. (Doc. 42). The case is now before the court on the parties' motions for reconsideration of the memorandum opinion and order. (Docs. 46, 47).³ Carter-Washington asks the court to reinstate her claim for violations of a court-imposed bankruptcy stay, while the defendants ask the court to eliminate the invasion of privacy claim. (Docs. 46, 47). For the reasons stated below, the court will deny both motions and, in the exercise of its discretion under 28 U.S.C. § 1367, will remand the sole remaining claim – a state law claim – to the Jefferson County Circuit Court.

I.   **Standard of Review**

The memorandum opinion and order at issue was an interlocutory order because it resolved fewer than all claims asserted in this case. A court may reconsider an interlocutory order at any time before entry of a final judgment. FED. R. CIV. P. 54(b). A district court should evaluate a motion to reconsider an interlocutory order "under the standards inherent in Rule 54(b) – plenary authority to reconsider, revise, alter, or amend a non-final order before the entry of final judgment." *Hornady v. Outokumpu Stainless, USA, LLC*, 118 F.4th 1367, 1379-80 (11th Cir. 2024) (internal quotation marks omitted).⁴ "Though district courts enjoy

---

³ The parties have briefed the motions fully. (Docs. 49, 50, 51, 52).

⁴ Before the Eleventh Circuit defined the standard governing Rule 54(b) motions to reconsider in *Hornady*, district courts applied the standards governing motions for reconsideration made under Rule 59(e) or 60(b). *Hornady*, 118 F.4th at 1379. In *Hornady*, the Eleventh Circuit held the

plenary power to reconsider non-final rulings, they need not employ plenary review when doing so. *Id.* at 1380. "Indeed, in most instances district courts should hesitate before revisiting their earlier interlocutory orders; important interests of finality, stability, and predictability underly that justifiable caution." *Id.*

## II.   Discussion

### A.   Carter-Washington's Motion for Reconsideration

The court determined a stay did not come into effect relative to Carter-Washington's third bankruptcy case until the bankruptcy court entered a written order granting Carter-Washington's motion seeking imposition of a stay on November 3, 2022, at approximately 3:00 P.M. Carter-Washington offered three pieces of evidence she argued showed the defendants violated the court-imposed stay. The first was her declaration she found two people removing personal belongings from the foreclosed property on October 28, 2022. The second was an e-mail the defendants' real estate agent sent to Carter-Washington's attorney at 12:18 P.M. on November 3, 2022, stating the defendants had directed that the "trash out" be completed. The third was an inspection of the foreclosed property conducted on behalf of the defendants on December 5, 2022. The court concluded the statement in Carter-Washington's declaration did not show a violation of the court-imposed bankruptcy stay because the stay was not yet in effect on October 28, 2022. The

---

standards governing Rule 59(e) and Rule 60(b) motions for reconsideration do not apply before entry of a final judgment, only after. *Id.*

3

court concluded the expression of intent contained in the November 3, 2022 e-mail, which was made more than two hours before imposition of the stay, was not significantly probative of a violation of the stay. Finally, the court concluded the December 5, 2022 inspection did not violate the stay because there was no evidence the inspection was conducted to harass Carter-Washington or coerce her to pay a debt. (Doc. 42 at 15-17).

Carter-Washington asserts two claims of error regarding the court's conclusions. First, she contends the court erred in concluding there was insufficient evidence to create a jury question as to whether the defendants removed personal belongings from the foreclosed property during the court-imposed bankruptcy stay. Second, she argues the court erred in concluding the inspection of the property conducted on December 5, 2022, did not violate the court-imposed stay. (Doc. 46).

Carter-Washington's first claim of error relies in turn on the argument the court erred in its determination of the time on November 3, 2022, when the bankruptcy stay went into effect – Carter-Washington argues the stay went into effect at 10:11:48 A.M. when the bankruptcy court orally ruled from the bench on her motion seeking imposition of the stay – and overlooked evidence of record showing the defendants carried out the intent expressed by their real estate agent in the e-mail to Carter-Washington's attorney. (Doc. 46 at 1-4).[5] The court assumes

---

[5] The court observes that in addition to identifying evidence she claims the court overlooked, Carter-Washington submitted with her motion for reconsideration declarations authored by herself and several members of her family, each stating he or she did not remove personal belongings

4

without deciding that the bankruptcy stay went into effect at 10:11:48 A.M. and that the defendants may be deemed to have known of the stay at that time.[6] The statement made in the 12:18 P.M. e-mail remains no more than an expression of intent that is not significantly probative of a violation of the court-imposed bankruptcy stay insofar as planning to do something is not the same as doing something.[7] The evidence Carter-Washington argues the court overlooked is likewise lacking in probative value.

The evidence Carter-Washington asserts the court overlooked is asset inspection reports created on November 3, 2022, and December 5, 2022, respectively. (Docs. 23-5, 23-6). Carter-Washington notes the November 3, 2022 report includes the comment "partial trash out and initial yard work complete, will be competed (sic) asap" and a photo showing the kitchen "full of items," while the December 5, 2022 report includes photos showing the kitchen "cleaned out and items [] removed." (Doc. 46 at 4). According to Carter-Washington, this means the defendants must have removed personal belongings from the foreclosed property

---

from the foreclosed property during the bankruptcy proceeding. (Docs. 45-4, 45-5, 45-6, 45-7). Evidence neither Carter-Washington nor her family members removed personal belongings from the foreclosed property during the bankruptcy proceeding does not permit a reasonable inference the defendants did remove personal belongings from the foreclosed property during the period of the bankruptcy proceeding when the court-imposed stay was in effect.

[6] Carter-Washington brought the timing of the oral ruling on her motion seeking imposition of the stay to the court's attention for the first time in her motion for reconsideration.

[7] The assumption does not affect the court's conclusion Carter-Washington's declaration she found two people removing personal belongings from the foreclosed property on October 28, 2022, did not show a violation of the court-imposed bankruptcy stay.

during the time the court-imposed bankruptcy stay was in effect. (Doc. 46 at 4). The court disagrees.

The comment indicating a partial "trash out" was completed on November 3, 2022, is not significantly probative of a violation of the court-imposed stay insofar as the stay was not in effect for the entirety of November 3, 2022, and there is no indication when on November 3, 2022 the partial "trash out" was completed or when the partial completion was documented in the asset inspection report. (*See* Doc. 23-5 at 2). The comment indicating the "trash out" would be completed "asap," like the statement made by the defendants' real estate agent that his client had directed the "trash out" to be completed, is lacking in probative significance insofar as it is an expression of intent. The kitchen photo included in the November 3, 2022 asset inspection report that shows the kitchen "full of items" bears the electronic time stamp "9:52," and day light is visible through a kitchen window. (Doc. 23-5 at 4). The court infers from these facts that the photo was taken at 9:52 A.M. – before even Carter-Washington contends the bankruptcy stay went into effect. A photo showing the kitchen "full of items" before imposition of the court-imposed stay and a photo showing the kitchen "cleaned out and items [] removed" after imposition of the stay and before it expired is not significantly probative that "items" were removed from the property during the stay.

With respect to her second claim of error, Carter-Washington contends, contrary to the court's conclusion, the inspection conducted December 5, 2022, did

6

violate the stay because she did not receive notice of the inspection and the defendants neither made any repairs nor undertook any other tasks as part of the inspection. According to Carter-Washington, the latter fact means the inspection can have had no purpose other than to harass her. (Doc. 46 at 4-6). The court again disagrees. First, whether the defendants were required to give Carter-Washington notice before the inspection and, if so, whether they gave such notice are not relevant to whether the inspection violated the court-imposed stay. *See In re Chesnut*, 422 F.3d 298, 302 (5th Cir. 2005) ("There are three elements to a claim [for a violation of a bankruptcy stay]: (1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3) these acts must have violated the stay."). Second, the lack of repairs or other tasks undertaken as part of the inspection does not permit a reasonable inference the purpose of the inspection must have been to harass Carter-Washington.

For the reasons stated above, Carter-Washington's motion for reconsideration fails to show the court erred in granting summary judgment in the defendants' favor on the claim for violations of the court-imposed bankruptcy stay. Therefore, the court will deny the motion.

### B.   Defendants' Motion for Reconsideration

As stated, the only claim that survived summary judgment is Carter-Washington's claim the defendants invaded her privacy by removing her personal belongings from the foreclosed property. The court concluded there was evidence

7

the defendants did remove personal belongings from the property – just not during the court-imposed bankruptcy stay – and that the defendants had not identified legal authority permitting the removal. The court then noted its independent research of the issue revealed persuasive authority suggesting a claim for invasion of privacy may lie where a foreclosure purchaser or its agent removes personal belongings from the foreclosed property, citing *Russell v. Am. Real Est. Corp.*, 89 S.W.3d 204, 212 (Tex. App. 2002), *DeVore v. Lyons*, 2017 WL 1231484, at *5 (N.D. Tex. Apr. 4, 2017), and *Mwangi v. Fed. Nat'l Mortg. Ass'n*, 162 F. Supp. 3d 1315, 1324 (N.D. Ga. 2016). (Doc. 42 at 17-22).

The defendants first contend the extra-jurisdictional cases on which the court relied in finding a claim for invasion of privacy may lie where a foreclosure purchaser or its agent removes personal belongings from the foreclosed property are distinguishable from this case. (Doc. 47). This argument does not show the defendants were entitled to summary judgment on Carter-Washington's invasion of privacy claim. The court's stated reason for allowing the invasion of privacy claim to survive was the defendants' failure to identify legal authority permitting the removal of personal belongings from the foreclosed property on October 28, 2022, which the defendants had not denied they did. Simply put, the court denied summary judgment in the defendants' favor on Carter-Washington's invasion of privacy claim because the defendants did not show that, as a matter of law, they were entitled to such. The defendants' failure to meet their summary judgment burden was a

8

sufficient ground on which to deny summary judgment in their favor, and the court's observation an invasion of privacy claim may lie where personal belongings are removed from foreclosed property was *dicta*.

The defendants next argue that, contrary to the court's conclusion, they did identify legal authority permitting the removal of Carter-Washington's personal belongings from the foreclosed property. (Doc. 47). They first assert that, "insofar as the [c]ourt [] presumed there is a genuine issue of material fact as to whether [Carter-Washington] abandoned the alleged personal property to allow the [invasion of privacy] claim to survive summary judgment, the record evidence blatantly contradicts [Carter-Washington's] unsupported claim that she had not abandoned the property." (Doc. 47 at 3). The court did not understand the defendants to present an argument in their summary judgment briefing that the invasion of privacy claim could not survive because Carter-Washington had abandoned her home and its contents prior to foreclosure. Upon further review, the court still does not discern any such argument in the briefing. (*See* Docs. 20, 24, 36). Further, the defendants do not articulate in their motion for reconsideration the relevance of Carter-Washington's alleged abandonment to the invasion of privacy claim. The court presumes the defendants would argue the alleged abandonment eliminated Carter-Washington's privacy interest in the personal belongings. The problem with this argument is that there is a genuine question of fact whether there was an abandonment.

The court acknowledges the defendants offered evidence Carter-Washington's house had been vandalized and lacked electricity, gas, and running water. The defendants also offered photographs of the interior and exterior of the house from which the court could see the property was in a state of disrepair. (Docs. 22-2, 23-1, 23-2, 23-5, 23-6, 23-8).  However, Carter-Washington submitted a declaration denying she had abandoned the house or its contents. (Doc. 26-1). The defendants argue Carter-Washington's "unsupported claim [] she had not abandoned the property" did not create a genuine question of fact regarding abandonment because it was "blatantly contradict[ed]" by the record evidence discussed above. (Doc. 47 at 2-3).[8] The court disagrees. First, Carter-Washington's denial she had abandoned her real or personal property was not unsupported. The denial, made in a declaration complying with the requirements of 28 U.S.C. § 1746(2), constitutes evidence. *See* § 1746(2); *Roy v. Ivy*, 53 F.4th 1347-48 (11th Cir. 2022). Second, the denial was not blatantly contradicted by the fact that Carter-Washington's house was not safely habitable and in a state of disrepair. Absent guidance from the defendants as to what constitutes legal abandonment the court resorts to the definition of

---

[8] "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* This means that when video evidence "utterly discredit[s]" the plaintiff's version of the facts, a court should disregard the latter and accept the former. *Id.* at 380-81; *see also Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010) (discussing *Scott*); *Brooks v. Miller*, 78 F.4th 1267, 1278 (11th Cir. 2023) (same).

"abandon" in *Black's Law Dictionary* – "[t]o relinquish or give up (something) with the intention of never again reclaiming one's rights or interest" – and concludes it is possible a person could intend to reclaim personal belongings inside an uninhabitable house. *See Abandon*, BLACK'S LAW DICTIONARY (12th ed. 2024).

The defendants' next argument, as the court construes it, is that foreclosure on the real property eliminated Carter-Washington's privacy interest in the personal belongings therein. (Doc. 47). The problem with this argument is that the defendants still have not cited legal authority that supports it. The court acknowledges, as it did in the memorandum opinion and order, that Wilmington was entitled to immediate possession of the property on October 12, 2022, when it purchased the property at the foreclosure sale. (*See* Doc. 42 at 19). However, as the court also concluded in the memorandum opinion and order, the basic legal distinction between real property and personal property requires the conclusion that a foreclosure purchaser's entitlement to immediate possession of real property does not extend to personal property contained within the real property, absent a provision in the loan providing otherwise. (*See* Doc. 42 at 19). The defendants cite several cases in their motion for reconsideration they contend support their action as permissible: *Garrett v. Valley Sand and Gravel*, Inc., 800 So. 2d 600 (Ala. Civ. App. 2000), *Warren v. Bank of Am., N.A.*, 717 F. App'x 474 (5th Cir. 2018), *Russell*, and *DeVore*. (Doc. 47). However, each of the cases is inapposite.

The court in *Garrett* observed the success of a conversion claim requires that

11

the plaintiff possess or have an immediate right to possess the property at issue. 800 So. 2d at 602. That is, possession or an immediate right to possession is an element of a conversion claim. *Id.*; *see also McGee v. McGee*, 91 So. 3d 659, 667 (Ala. 2012). The court in *Garrett* held the conversion claim before it failed because, after selling the real property on which the alleged converted property (equipment) was situated to a third party, the plaintiff could not have entered the real property to take possession of the equipment without becoming a trespasser. 800 So. 2d at 602. *Garrett* would foreclose a conversion claim if Carter-Washington had brought one. However, she did not. She brought a claim for invasion of privacy, and possession or the immediate right to possession is not an element of an invasion of privacy claim. *See Liberty Loan Corp. of Gadsden v. Mizell*, 410 So. 2d 45, 47 (Ala. 1982) (defining particular type of invasion of privacy claim asserted by Carter-Washington as the "wrongful intrusion into one's private activities in such manner as to outrage or cause mental suffering, shame[,] or humiliation to a person of ordinary sensibilities.").

*Warren*, unlike *Garrett*, did involve an invasion of privacy claim in the post-foreclosure context. The claim was based on allegations that, after foreclosing on the plaintiff's property and with the plaintiff's personal possessions still inside, the property manager for the foreclosure purchaser changed the locks, removed the window coverings, and raised the blinds. *Warren*, 717 F. App'x at 475. The Fifth Circuit held the claim failed because, after foreclosure, the property was not a place

12

of solitude or seclusion for the plaintiff and the plaintiff's affairs there were not private, insofar as the plaintiff would be a trespasser if she entered the property. *Id.* at 478-79. While *Warren* addressed the same general cause of action at issue here (invasion of privacy) in the same general context (post-foreclosure), that is where the similarities end. Critically, Carter-Washington's surviving invasion of privacy claim is based on the defendants' removal of personal belongings from the foreclosed property and, contrary to the defendants' assertion, neither the foreclosure purchaser in *Warren* nor its property manager were alleged to have removed the plaintiff's personal belongings from the foreclosed property. They removed window coverings – an allegation the court interprets to mean they took down some type of material placed over the windows – but the plaintiff's personal possessions remained inside. *See id.* at 475.

*Russell* involved an invasion of privacy claim in the post-foreclosure context, as well. The Texas appeals court held evidence a real estate agent rummaged through "intimate personal belongings" of the tenants of foreclosed property – including clothing, family photos, and personal care items – while conducting an inspection of the property for the new owner raised a fact issue as to whether the real estate agent intruded into the tenants' solitude, seclusion, or private affairs or concerns. *Russell*, 89 S.W.3d at 212. The court described the tenants as being in "rightful possession" of the property in which the personal belongings were found but did not clearly hold rightful possession was a requirement for the success of an

13

invasion of privacy claim. *See id.*[9] Similarly, and contrary to the defendants' suggestion, there was no clear holding in *DeVore* that rightful possession of the real property from which personal belongings are taken is an element of a claim for invasion of privacy related to taking of the personal belongings. *See DeVore*, 2017 WL 1231484, at *5.

For the reasons stated above, the defendants' motion for reconsideration fails to show the court erred in denying summary judgment in the defendants' favor on Carter-Washington's invasion of privacy claim. Therefore, the court will deny the motion.

### C. Supplemental Jurisdiction Analysis

Although the parties' motions for reconsideration are meritless, the exercise of reconsidering the memorandum opinion and order was not for naught. It drew renewed attention to the bases of federal subject matter jurisdiction in this case: federal question and supplemental jurisdiction. (*See* Docs. 1, 13). Carter-Washington's claim the defendants violated the court-imposed bankruptcy stay was the federal claim over which the court had original jurisdiction and provided the

---

[9] By contrast, the court acknowledged rightful possession is a requirement for the success of a trespass claim and held the tenants' trespass claim survived summary judgment because they were in rightful possession of the real property. *Id.* at 208-09. The Fifth Circuit in *Warren* distinguished the trespass claim before it from the trespass claim in *Russell* on the rightful possession element, holding the trespass claim before the federal appeals court failed because the defendant indisputably had ownership and authorization to enter the property. *Warren*, 717 F. App'x at 477-78, 478 n.7. It did not, as the defendants assert, distinguish the invasion of privacy claim before it from the invasion of privacy claim in *Russell* on the basis of rightful possession. (*See* Doc. 47 at 9-10).

basis for exercising supplemental jurisdiction over Carter-Washington's three state law claims, including her invasion of privacy claim. *See* 28 U.S.C. § 1367(a) (permitting federal district court to exercise supplemental jurisdiction over state law claims that are so related to claims in an action over which it has original jurisdiction as to "form part of the same case or controversy under Article III of the United States Constitution."). Subsection (c)(3) of the supplemental jurisdiction statute permits a federal district court to decline to continue exercising supplemental jurisdiction over state law claims if it "has dismissed all claims over which it has original jurisdiction." § 1367(c)(3).

When determining whether to decline the exercise of supplemental jurisdiction under § 1367(c)(3), a court should consider four factors: judicial economy, convenience, fairness to litigants, and comity. *Ameritox, Ltd. v. Millenium Laboratories, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015). Judicial economy and comity are served when state law issues are resolved by state courts. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). This is particularly so when the statutory basis for declining to exercise supplemental jurisdiction is the pretrial dismissal of all federal claims. *Id.*[10] "It is a bedrock principle that 'needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of

---

[10] The supplemental jurisdiction statute provides bases for declining to exercise supplemental jurisdiction other than the pretrial dismissal of all federal claims. *See* § 1367(c).

15

applicable law.'" *Ameritox*, 803 F.3d at 540 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (alteration adopted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).[11] The Eleventh Circuit has gone so far as to "encourage" district courts to decline the exercise of supplemental jurisdiction over remaining state law claims when all federal claims have been dismissed prior to trial. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004); *Harris-Billups on behalf of Harris v. Anderson*, 61 F.4th 1298, 1305-06 (11th Cir. 2023) (citing *Raney*). The appeals court has provided this encouragement "repeatedly," *Estate of Owens v. GEO Grp., Inc.*, 660 F. App'x 763, 775 (11th Cir. 2016), and over a "long" period, *Williamson v. Ala. Dep't of Mental Health & Mental Retardation*, 2023 WL 5287873, at *12 (11th Cir. Aug. 17, 2023). Moreover, of note here, the Eleventh Circuit has affirmed a district court's *sua sponte* declination to exercise supplemental jurisdiction over state law claims months after granting summary judgment on the federal claim that had anchored the state law claims. *See Estate of Owens*, 660 F. App'x at 765-66, 775-77.

---

[11] Supplemental jurisdiction formerly was known as pendent or ancillary jurisdiction. Section 1367 codified the concepts of pendent and ancillary jurisdiction. *Palmer v. Hosp. Auth. of Randolph Cnty.*, 22 F.3d 1559, 1562 n.3, 1563 (11th Cir. 1994). The Supreme Court decided *Gibbs* and *Cohill* in the pre-§ 1367 context.

The court finds judicial economy and comity will be served by allowing the Alabama state courts to resolve Carter-Washington's invasion of privacy claim, especially given the absence of on-point authority before the court regarding the defendants' conduct.  The court is not convinced one way or the other whether the removal of personal belongings from the foreclosed property constituted an invasion of Carter-Washington's privacy under Alabama law.  The Alabama state courts are in a better position to settle the legal question, and they are equally capable of resolving any remaining factual disputes relevant to the invasion of privacy claim.  The court sees no reason why considerations of convenience or fairness would be appreciably impacted by the court's declination to exercise supplemental jurisdiction over the claim and, insofar as there may be some inconvenience involved in returning to state court, the court finds the inconvenience is outweighed by the interests of judicial economy and comity discussed above.  Therefore, the court will exercise its discretion under § 1367 to remand the invasion of privacy claim to the Jefferson County Circuit Court.[12]

---

[12] Where a declination to exercise supplemental jurisdiction occurs in a case that originated in federal court, the proper course of action is to dismiss the state law claim without prejudice so it may be re-asserted in the appropriate state court.  *Pace v. Peters*, 524 F. App'x 532, 537 (11th Cir. 2013).  Where the declination occurs in a case removed from state court, the proper course of action is to remand the state law claim.  *See Myers v. Cent. Fla. Invs., Inc.*, 592 F.3d 1201, 1226-27 (11th Cir. 2010) ("[F]ederal district courts in removal cases must remand, rather than dismiss, state law claims over which they decline to exercise supplemental jurisdiction.").

## III. Conclusion

For the reasons stated above, the court **DENIES** the parties' motions for reconsideration (Docs. 46, 47) and **DECLINES** to exercise supplemental jurisdiction over the sole remaining claim – the state law invasion of privacy claim. The court will enter an order remanding that claim to the Jefferson County Circuit Court.

**DONE** this 24th day of June, 2025.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE